UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD PULLEY,<br><br>  Plaintiff,<br><br>  v.<br><br>WELLS FARGO BANK, N.A., a business entity; US BANK, N.A., AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASSTHROUGH CERTIFICATES, SERIES 2006-AR-2, a business entity; and DOES 1-50; inclusive,<br><br>  Defendants. | Case No. 13-cv-05904 NC<br><br>**ORDER DENYING IN PART AND GRANTING IN PART WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 39 |

  Plaintiff Richard Pulley brings this action against Wells Fargo and U.S. Bank as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Passthrough Certificates, Series 2006-AR-2, alleging that he is the victim of a fraudulent loan modification process that has left him facing a wrongful foreclosure. Defendants now move to dismiss each cause of action in the first amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because the Court finds that Pulley has sufficiently stated a claim for fraud, negligent misrepresentation, intentional infliction of emotional distress, and violation of the Business and Professions Code § 17200, the motion is DENIED as to these claims. As to the cause of action for wrongful foreclosure under California Civil Code § 2924, the motion is GRANTED WITH LEAVE TO AMEND.

# I. BACKGROUND

## A.  The Allegations of the Operative Complaint

In analyzing claims under Federal Rule of Civil Procedure 12(b)(6), the Court assumes that all material facts alleged in the complaint are true. *Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010). The operative, first amended complaint alleges that Pulley took out a loan secured by a property at 401 Nova Albion Way, San Rafael, California (the "property") from Wells Fargo in 2005. Dkt. No. 37 ¶¶ 2, 7. The complaint further alleges that in February and March 2009, Pulley spoke to several representatives of Wells Fargo and informed them that he was not able to make his monthly mortgage payment. *Id.* ¶¶ 8-11. The Wells Fargo representatives told Pulley that there were no options available to him to resolve this issue. *Id.* Pulley started receiving calls from the Wells Fargo Collections Department requesting payment of the past due amounts. *Id.* ¶¶ 10-11, 13. During this time, Pulley was attempting to obtain the necessary resources to bring his loan current and intended to reinstate his loan. *Id.* ¶ 12.

On April 18, 2009, Pulley received a call from a representative of Wells Fargo's Collections Department who identified herself as "Mary" who informed him that "unless he was in default for 6 months on the loan there was nothing WELLS could do to assist" but if he "stayed in default for the six (6) month period, WELLS would provide [Pulley] with a modification of his loan." *Id.* ¶ 13.

On May 19, 2009, Pulley received a call from another representative of the Collections Department who identified herself as "Jane," who advised Pulley that "because he was delinquent in so many payments that the loan once it reached six (6) months, that he would receive a modification of his loan." *Id.* ¶ 14. On July 28, 2009, Pulley called Wells Fargo and spoke with an authorized representative who identified herself as "Emily" and who informed him that "he would receive a Loan Modification and such would resolve this issue." *Id.* ¶ 15. On the same day, Pulley spoke to "Amy," a Wells Fargo customer service representative in the Loss Mitigation Department who provided him with the information of what documentation was required to begin processing Pulley's "promised loan

modification." *Id.* ¶ 16.  Pulley provided the requested loan modification documentation to Wells Fargo.  *Id.* ¶ 17.  On August 1, 2009, while Pulley's "promised loan modification was pending," he was placed on a three-month Forbearance Plan by Wells Fargo.  *Id.* ¶ 18.

On November 18, 2009, Pulley received a letter from Wells Fargo stating they would not adjust the terms of the mortgage due to not receiving payments within the time frame required pursuant to the Forbearance Plan.  *Id.* ¶ 19.  Pulley alleges that he responded to Wells Fargo, demonstrating that he did make the payments and met the terms of the Forbearance Plan.  *Id.* ¶¶ 20-21.  On December 15, 2009, Pulley resumed making his full monthly mortgage payments.  *Id.* ¶ 22.

The complaint further alleges that, on April 26, 2010, Pulley attended a Wells Fargo Home Preservation Workshop at the Oakland Convention Center in Oakland.  *Id.* ¶ 23.  At this workshop, Pulley was informed that Wells Fargo was only the servicer of the loan and that Pulley's loan was owned by an entity that Wells Fargo would not disclose.  *Id.*  Also at this time, Wells Fargo offered Pulley a plan which did not reduce the monthly payment and would put the arrearages on the back of the loan.  *Id.*  While Pulley "was unhappy that there was no reduction in the monthly mortgage payment, [he] requested that the paperwork for this loan modification plan be forwarded to him for signature."  *Id.*

Between May 2010 and February 2012, Wells Fargo denied loan modification requests made by Pulley and he continued submitting supporting documentation requested by Wells Fargo.  *Id.* ¶¶ 24-32.

On October 19, 2012, Pulley received a letter from Wells Fargo stating that his mortgage has been referred to foreclosure.  *Id.* ¶ 33.  On November 14, 2012, Pulley's monthly mortgage payment was refused.  *Id.* ¶ 34.  Pulley had been making his resumed monthly mortgage payments since December 15, 2009.  *Id.*

On December 3, 2012, Plaintiff received a telephone call from Wells Fargo in which he was informed for the first time that he was not in the loan modification review process and that past documentation sent in by him was incorrect.  *Id.* ¶ 36.  At this time, Pulley had submitted approximately twelve complete loan modification packages to Wells Fargo.  *Id.*

Case No. 13-cv-05904 NC
ORDER ON MOTION TO DISMISS            3

On December 7, 2012, Pulley had a telephone conversation with a Wells Fargo representative, Joshua Johnson. *Id.* ¶ 39. Pulley was informed that his mortgage was owned by a Mortgage Backed Securities Group that did not participate in HAMP or any government loan modification programs. *Id.* Johnson requested that Pulley provide a new loan modification package, which Pulley did. *Id.*

On December 11, 2012, a notice of default for the property was recorded in Marin County. *Id.* ¶ 40. In December 2012 and January 2013, Pulley was informed by Wells Fargo that his loan was with an underwriter in a review process and he submitted additional information requested by Wells Fargo. *Id.* ¶¶ 41-44. After that, Pulley's request for loan modification was again denied, he was encouraged to reapply, and he did so through his representative, submitting additional documentation. *Id.* ¶¶ 45-48.

The complaint alleges that "[r]ecently, Pulley received written correspondence from [Wells Fargo] stating that his loan will not be permanently modified as [Wells Fargo] lacks the 'contractual authority' to modify his loan." *Id.* ¶ 49.

**B.  Procedural History**

Pulley initially filed this action in the Superior Court of the State of California for the County of Marin on November 7, 2013. Dkt. No. 1-1 at 8. On December 19, 2013, Wells Fargo and U.S. Bank removed this action to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a), and then moved to dismiss the complaint. Dkt. Nos. 1, 33. Instead of opposing the motion, Pulley filed the first amended complaint. Dkt. No. 37.

In his first amended complaint, Pulley brings five claims against Wells Fargo for: (1) fraud; (2) negligent misrepresentation; (3) intentional infliction of emotional distress; (4) wrongful foreclosure in violation of California Civil Code § 2924 *et seq.*; and (5) violations of the Business and Professions Code § 17200 *et seq.* Dkt. No. 37.

On January 7, 2015, Wells Fargo and U.S. Bank moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the first amended complaint for failure to state a claim. Dkt. No. 39.

The Court ordered the removing defendants to show cause why the case should not be

remanded to state court due to the failure of the removal notice to allege the citizenship of all relevant parties for diversity purposes. Dkt. No. 6. Defendants filed a response to the order to show cause. Dkt. No. 9. All parties consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. No. 35 at 13.

**C.     Defendants' Requests for Judicial Notice**

Defendants request that the Court take judicial notice of documents in support of their response to the order to show cause and the motion to dismiss. Dkt. Nos. 10, 40. Pulley did not oppose the requests for judicial notice.

Generally, a court may not look to matters beyond the complaint without converting a motion to dismiss into one for summary judgment. *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983 (N.D. Cal. 2010) (citations omitted). However, a court may take judicial notice of material that is submitted as part of the complaint, or is necessarily relied upon by the complaint, as well as matters of public record. *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). Under Federal Rule of Evidence 201(b), "a judicially noticed fact must be one not subject to reasonable dispute that is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned." *Datel Holdings*, 712 F. Supp. 2d at 983. A court may "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted).

The Court will take judicial notice of the existence of Wells Fargo's Exhibits 1 through 6, Dkt. No. 40, and Exhibits 1 through 4, Dkt. No. 10, because they are certified copies of official records of Marin County and as such, are public records that are a proper subject of judicial notice. *See e.g.*, *W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of documents in a county public record, including state court file and deeds of trust); *Valasquez v. Mortgage Elec. Registration Sys., Inc.*, No. 08-3818 PJH, 2008 WL 4938162, at *2-3 (N.D. Cal. Nov. 17, 2008) (taking judicial notice of deed of trust and notice of default).

The Court will take judicial notice of the existence of Wells Fargo's Exhibits 5 through 9, Dkt. No. 10, because they are court files and as such, are public records that are a proper subject of judicial notice. *See, e.g.*, *Hunt v. Check Recovery Sys. Inc.*, 478 F. Supp. 2d 1157, 1160-61 (N.D. Cal. 2007) ("Judicial notice may be taken of 'adjudicative facts' such as court records, pleadings.").

As to Exhibits 7 and 8 to the request for judicial notice in support of the motion to dismiss, Dkt. No. 40, defendants assert that they are letters to which the first amended complaint refers at paragraph 49, and that they are a proper subject of judicial notice under the incorporation-by-reference doctrine. Dkt. No. 37 ¶ 49; 40 at 3-4. The incorporation-by-reference doctrine permits courts when ruling on a motion to dismiss to take into account documents when "the plaintiff's claim depends on the contents of a document," and "the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court finds that it is appropriate to take judicial notice of Exhibits 7 and 8 as incorporated by reference in the first amended complaint.

**D.   Subject Matter Jurisdiction**

Before turning to the merits of defendants' motion, the Court will address the issue of its subject matter jurisdiction. At the time of the removal, the complaint named as a defendant Cal-Western Reconveyance Corporation. *See* Dkt. No.1-1 at 9. While the notice of removal failed to allege the citizenship of defendant Cal-Western, numerous courts have considered Cal-Western a citizen of California. *See e.g.*, *Morrow v. Wells Fargo Bank*, No. 12-cv-03045 LB, 2012 WL 5471133, at *4 (N.D. Cal. Nov. 9, 2012); *Osorio v. Wells Fargo Bank*, No. 12-cv-02645 RS, 2012 WL 2054997, at *2 (N.D. Cal. June 5, 2012). Because plaintiff is alleged to be a citizen of California, Dkt. No. 1 at 2, Cal-Western's California citizenship would defeat diversity. The first amended complaint, filed after this action was removed to federal court, no longer names Cal-Western as a defendant. Dkt. No. 37. However, for removal purposes, diversity must exist *both* at the time the action was commenced in state court *and* at the time of removal. *See Ryan ex rel. Ryan v. Schneider*

*Nat. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001); *Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002).

While diversity jurisdiction under 28 U.S.C. § 1332 ordinarily requires complete diversity of the parties, one exception to that rule is where the non-diverse defendant is fraudulently joined. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *McCabe v. Gen. Foods*, 811 F.2d 1336, 1339 (9th Cir. 1987). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe*, 811 F.2d at 1339. However, "[t]here is a strong presumption against fraudulent joinder, and defendants who assert this defense in order to defeat diversity jurisdiction 'carry a heavy burden of persuasion.'" *Osorio*, 2012 WL 2054997, at *2 (citations omitted). "Indeed, [defendants] must show to a near certainty that joinder was fraudulent and that plaintiff has *no actual intention to prosecute* an action against those particular resident defendants." *Id.* (internal quotation marks and citations omitted).

Two of the five causes of action in plaintiff's original complaint were directed to Cal-Western: for wrongful foreclosure in violation of California's Civil Code § 2924, and for violation of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200. Dkt. No. 1-1 at 18-20. The original complaint alleged that Cal-Western "is assisting WELLS with the unlawful foreclosure of Plaintiff's Property." *Id.* at 19. The complaint further alleged that Cal-Western "is in the routine business practice of assisting banks with the wrongful foreclosures of homes" and "routinely proceeds to sale on properties with knowledge that substantial fraud, negligence and/or irregularities in the servicing of the loan created the purported deficiency on which the Notice of Default and foreclosure sale are based." *Id.* at 20.

The judicially noticed documents show that Cal-Western became the trustee under plaintiff's deed of trust by way of a substitution signed and notarized on December 5, 2012, and recorded on December 11, 2012. Dkt. No. 10-1. Cal-Western then recorded a notice of default on December 11, 2012. *Id.* Cal-Western recorded a notice of trustee's sale on May

Case No. 13-cv-05904 NC
ORDER ON MOTION TO DISMISS            7

9, 2013, and a second notice of trustee's sale on September 17, 2013. *Id.*

On June 25, 2013, before this action was commenced, Cal-Western filed a petition for bankruptcy. Dkt. No. 10-1 at 14-16. Pulley's claims against Cal-Western arose before the filing of the bankruptcy petition and were thus stayed by operation of 11 U.S.C. § 362(a)(1) (imposing an automatic stay of the commencement or continuation of any legal action that was or could have been filed against the debtor before the petition or to recover a prepetition claim against the debtor).

Furthermore, on July 23, 2013, the Bankruptcy Court entered an order that, among other things, established September 16, 2013, as a deadline for filing proofs of claim against Cal-Western, after which pre-petition claims would be barred. *Id.* Pulley did not file a proof of claim against Cal-Western by that date. *Id.* The Court finds that the original complaint obviously failed to state a cause of action against Cal-Western, its joinder was therefore fraudulent, and its citizenship for diversity purposes can be disregarded. The order to show cause regarding subject matter jurisdiction is discharged.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Coal. For ICANN Transparency*, 611 F.3d at 501. The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

"[I]n dismissing for failure to state a claim under Rule 12(b)(6), 'a district court

should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995)).

### III. DISCUSSION

**A.   Pulley States a Claim for Fraud.**

Wells Fargo contends that the first cause of action for fraud must be dismissed because it does not meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Dkt. No. 39 at 12. A plaintiff alleging fraud "must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). Thus, plaintiff must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks and citation omitted). Mere conclusory allegations of fraud will not suffice. *Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir. 1977); *Das v. WMC Mortgage Corp.*, 831 F. Supp. 2d 1147, 1166 (N.D. Cal. 2011).

In the fraud cause of action, Pulley alleges that Wells Fargo misrepresented to him, by way of authorized representatives Mary, Jane, and Emily that if he stayed in default for six months he would qualify for and would receive a permanent loan modification. Dkt. No. 37 ¶ 54. Pulley alleges the dates and content of these conversations. *Id.* ¶¶ 13-15. Pulley further alleges that it was only recently that Wells Fargo informed him that it lacks the "contractual authority" to modify his loan. *Id.* ¶ 49; *see* Dkt. No. 40-1 at 44 ("We do not have the contractual authority to modify your loan because of limitations in our servicing agreement."). Pulley alleges that "all of Defendant's written and verbal communications with Plaintiff were misrepresentations in regards to the modification of his loan as WELLS never had the contractual authority to modify Plaintiff's loan in the first place." Dkt. No. 37 ¶ 54.

Case No. 13-cv-05904 NC
ORDER ON MOTION TO DISMISS                9

Wells Fargo argues that the fraud claim should be dismissed because the alleged statements that Pulley "would receive" a loan modification cannot form the basis for a fraud claim as they relate to an anticipated loan modification, which is "purely a prospective event." Dkt. No. 39 at 13. Wells Fargo, however, ignores Pulley's allegations that these statements were fraudulent in light of the alleged fact that Wells Fargo did not have the authority to provide a loan modification. The Court finds that the first amended complaint states a claim for fraud.

Wells Fargo also contends that Pulley fails to allege that he relied on the misrepresentations or that these misrepresentations caused him any harm. Dkt. No. 39 at 13. The Court disagrees. Pulley alleges that he was led to believe that Wells Fargo could provide a loan modification and, in reliance on this, over the course of five years he submitted loan modification requests and documents on numerous occasions, including through a representative. Dkt. No. 37 ¶¶ 7-50. Pulley alleges that, as a result, he suffered losses through overcharges and late fees, incurred attorneys' fees and costs to save his home, a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression. *Id.* ¶ 59. The Court finds that the first amended complaint sufficiently alleges reliance, causation, and damages caused by the misrepresentations.

Finally, Wells Fargo argues that Pulley's fraud claim is time-barred because the misrepresentations are alleged to have been made between April and July 2009, Dkt. No. 37 ¶¶ 13-15, and he received the denial of the loan modification on November 18, 2009, *id.* ¶ 19, at which time his claim arose. Dkt. No. 39 at 14. The statute of limitations for fraud in California is three years. *Newsom v. Countrywide Home Loans, Inc.*, 714 F. Supp. 2d 1000, 1014 (N.D. Cal. 2010); Cal. Civ. Proc. Code § 338(d). "Generally, 'the three-year period does not begin to run until the plaintiff has actual or constructive notice of the facts constituting the fraud.'" *McDonald v. Wells Fargo Bank*, No. 13-02334 KAW, 2013 WL 6512881, at \*5 (N.D. Cal. Dec. 12, 2013) (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)). "Constructive notice is knowledge of facts sufficient to make a

Case No. 13-cv-05904 NC
ORDER ON MOTION TO DISMISS 10

1  reasonably prudent person suspicious of fraud, thus putting him on inquiry." *Id.*  Here,
2  Pulley has suffiicently alleged that he did not have notice of the facts constituting the fraud
3  until he was informed recently by Wells Fargo in a letter (dated December 8, 2014, Dkt.
4  No. 40-1 at 44) that Wells Fargo did not have the contractual authority to provide a loan
5  modification.  Accordingly, the Court finds that the fraud claim is not time-barred.

**B.     Pulley States a Claim for Negligent Misrepresentation.**

Pulley also brings a claim for negligent misrepresentation based on Wells Fargo's misrepresentations.  Dkt. No. 37 ¶ 62.  Under California law, to state a claim for negligent misrepresentation, the plaintiff must allege: (1) a misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the misrepresentation; (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and (5) resulting damage.  *Hosseini v. Wells Fargo Bank, N.A.*, No. 13-cv-02066 DMR, 2013 WL 4279632, at *7 (N.D. Cal. Aug. 9, 2013).

Here, Wells Fargo repeats the arguments it made with respect to the fraud claim, that none of the alleged statements was an actionable misrepresentation, that Pulley has failed to allege reliance or damages, and that the claim is time-barred.  Dkt. No. 39 at 15-16.  These arguments again ignore the allegations in the first amended complaint and fail for the same reasons discussed above.

Additionally, Wells Fargo argues that the negligent misrepresentation claim should be dismissed because Pulley fails to allege how any of the statements constituted a breach of a duty of care that Wells Fargo owed to him.  Dkt. No. 39 at 15.  To state a claim for negligent misrepresentation, Pulley must allege the existence of a duty of care between him and Wells Fargo.  *See Hosseini*, 2013 WL 4279632, at *7*; see also Lindberg v. Wells Fargo Bank N.A.*, No. 13-cv-0808 PJH, 2013 WL 3457078, at *5 (N.D. Cal. July 9, 2013).

As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. &*

*Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citation omitted).  The test for determining whether a financial institution exceeded its role as money lender and thus owes a duty of care to a borrower-client involves "the balancing of various factors, among which are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm."  *Id.* at 1098.

As this Court has previously noted, several cases in our District have recently found that a lender may have a special duty of care when engaging in the loan modification process.  *See Curley v. Wells Fargo & Co.*, No. 13-cv-03805 NC, 2014 WL 2187037, at *3 (N.D. Cal. May 23, 2014); *see also Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. 13-cv-05881 LB, 2014 WL 890016, at *17 (N.D. Cal. Mar. 3, 2014) ("While a lender may not have a duty to modify the loan of any borrower who applies for a loan modification, a lender surely has a duty to submit a borrower's loan modification application once the lender has told the borrower that it will submit it, as well as a duty to not foreclose upon a borrower's home while the borrower's loan modification is being considered once the lender has told the borrower that it won't foreclose during this time and to ignore all foreclosure-related notices.").

Here, Pulley alleges that Wells Fargo processed his loan modification requests, even encouraged him to reapply, and requested additional information from him on numerous occasions over the course of five years.  Wells Fargo had the duty to inform Pulley in a timely manner that it could not grant the loan modification requests because it did not have the contractual authority to modify the loan.  Accordingly, the Court finds that the first amended complaint states a claim for negligent misrepresentation.

**C.   Pulley States a Claim for Intentional Infliction of Emotional Distress.**

Wells Fargo also moves to dismiss Pulley's third cause of action for intentional infliction of emotional distress.  In order to establish a claim for intentional infliction of

emotional distress under California law, a plaintiff must show: (1) that the defendant's conduct was outrageous; (2) that the defendant intended to cause or recklessly disregarded the probability of causing emotional distress; and (3) that the plaintiff's severe emotional suffering was; (4) actually and proximately caused by defendant's conduct. *Austin v. Terhune,* 367 F.3d 1167, 1172 (9th Cir. 2004).

Outrageous conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *McMahon v. Craig*, 176 Cal. App. 4th 222, 1515 (2009) (internal quotation marks and citation omitted). In the foreclosure context, for example, the court in *Bass v. Ameriquest Mortgage Company* found that the plaintiff borrower sufficiently stated a claim for intentional infliction of emotional distress where the lender forged the borrower's signature, refused to honor the borrower's rescission, and proceeded with foreclosure when the borrower failed to make payments. No. 09-cv-00476, 2010 WL 3025167, at *11 (D. Hawaii, Aug. 3, 2010).

On the other hand, courts have dismissed claims against mortgage servicers who foreclosed on property in the face of the borrower's failure to make payments. *See, e.g., Quinteros v. Aurora Loan Servs.,* 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010) ("The act of foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim.") (citations omitted); *Mehta v. Wells Fargo Bank*, 737 F. Supp. 2d 1185, 1204 (S.D. Cal. 2010) ("The fact that one of Defendant Wells Fargo's employees allegedly stated that the sale would not occur but the house was sold anyway is not outrageous as that word is used in this context."); *Narramore v. HSBC Bank USA,* No. 09-cv-635, 2010 WL 2732815, at *7 (D. Ariz. July 7, 2010) (failing to negotiate in good faith and foreclosing without homeowner's knowledge not "intolerable to a civilized society").

Wells Fargo here argues that foreclosure on a home, absent extraordinary circumstances, is not extreme conduct that supports a claim for intentional infliction of emotional distress. Dkt. No. 39 at 17. However, Pulley alleges more than that his mortgage was referred to foreclosure after being told he would receive a loan modification. He

Case No. 13-cv-05904 NC
ORDER ON MOTION TO DISMISS            13

alleges that Wells Fargo processed his loan modification requests, encouraged him to reapply, and requested additional information from him on numerous occasions over the course of five years while knowing that it did not have the contractual authority to modify the loan. Pulley claims that he suffered severe emotional distress in the form of confusion, frustration, fear, anguish, nervousness, helplessness, anxiety, shock, humiliation, and shame as a result of Wells Fargo's conduct. Dkt. No. 37 ¶ 74. The Court finds that Pulley has sufficiently stated a claim for intentional infliction of emotional distress.

Wells Fargo also contends that the intentional infliction of emotional distress is barred by a two-year statute of limitations. Dkt. No. 39 at 17 (citing Cal. Civ. Proc. Code § 335.1; *Miller v. Bank of Am., Nat. Ass'n*, 858 F. Supp. 2d 1118, 1127 (S.D. Cal. 2012)). This argument again fails because Pulley has sufficiently alleged that he did not discover until recently that Wells Fargo did not have the contractual authority to provide a loan modification.

### D. Pulley Fails to State a Claim for Wrongful Foreclosure in Violation of Civil Code § 2924.

Pulley also brings a cause of action against both U.S. Bank and Wells Fargo alleging that defendants' conduct "constitutes acts or practices in violation of California Civil Code § 2924 *et seq.*" Dkt. No. 37 ¶¶ 77, 81. Pulley also alleges that "the entire course" of Wells Fargo's conduct "is an attempt to circumvent California Civil Code § 2924 *et seq.*," that Wells Fargo "engineered a default against Plaintiffs [sic]," and violated California Civil Code § 2924(a)(1)(C) "which requires that the nature of an actual breach be known to the beneficiary." *Id.* ¶¶ 78-79.

Section 2924 allows a lender to initiate nonjudicial foreclosure proceedings when the mortgagor is in default and imposes specific procedural requirements on the party seeking to foreclose. *Izsak v. Wells Fargo Bank*, No. 13-cv-05362 SI, 2014 WL 1478711, at *4 (N.D. Cal. Apr. 14, 2014). Subsection § 2924(a)(1)(C) provides that a notice of default must include, among other things, "[a] statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the

property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default." Cal. Civ. Code § 2924(a)(1)(C).

The Court agrees with defendants that Pulley has failed to allege that there was a defect in the notices recorded in the nonjudicial foreclosure proceedings. Pulley has not identified any other Civil Code section that Wells Fargo or U.S. Bank have allegedly violated or alleged a plausible basis for such claimed violation. However, because it is not clear that this defect cannot possibly be cured by the allegation of other facts, the Court dismisses the wrongful foreclosure claim with leave to amend.

**E.     Pulley States a Claim for Violation of Business and Professions Code § 17200.**

California's Business and Professions Code § 17200 prohibits unlawful, unfair or fraudulent business acts or practices. A business practice is "fraudulent" within the meaning of § 17200 if "members of the public are likely to be deceived." *Comm. on Children's Television v. General Foods Corp.*, 35 Cal. 3d 197, 211 (1983). Here, the Court has already found that the first amended complaint sufficiently states a claim for fraud. *See* Dkt. No. 37 ¶ 88. Likewise, the Court finds that the complaint states a claim under the fraudulent prong of § 17200.

Additionally, Wells Fargo argues that a plaintiff making a UCL claim must allege "a causal connection" between the UCL violation and the plaintiff's loss of money or property. Dkt. No. 39 at 18-19 (citing *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010)). Here, Pulley alleges that, as a result of Wells Fargo's fraudulent representations, he suffered losses through overcharges and late fees, incurred attorneys' fees and costs to save his home, a loss of reputation and goodwill, and destruction of credit, among other things. Dkt. No. 37 ¶¶ 59, 94. The Court finds that Pulley has sufficiently alleged a causal connection between the UCL violation and his loss of money or property. *See Rubio*, 613 F.3d at 1204 (payment of extra money as a result of the defendant's action and damage to credit constitute loss of money or property that are sufficient for standing under the UCL).

## IV. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the first amended

Case No. 13-cv-05904 NC
ORDER ON MOTION TO DISMISS             15

complaint is denied as to the claims for fraud, negligent misrepresentation, intentional infliction of emotional distress, and violation of the UCL.  As to the cause of action for wrongful foreclosure under California Civil Code § 2924, the motion is granted with leave to amend.

By April 10, 2015, Pulley must either file a second amended complaint in accordance with this order, or file a notice that he does not intend to amend the complaint.  Defendants must file their answer within 14 days of the filing of the second amended complaint or the notice of election not to amend the complaint.

IT IS SO ORDERED.

Date: March 26, 2015

_____
Nathanael M. Cousins
United States Magistrate Judge